**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>vs.<br><br>DOUGLAS P. DVORAK<br><br>   Defendant. | No. 08-CR-54-LRR<br><br>**ORDER** |

*TABLE OF CONTENTS*

*I.*  *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*  *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.* *TRIAL EVIDENCE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
   *A.* *Medicaid* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
   *B.* *Defendant* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
   *C.* *Ashley Owens* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
   *D.* *Defendant's Medicaid Billing* . . . . . . . . . . . . . . . . . . . . . . . . . *4*
     *1.* *Generally* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
     *2.* *Vania Minor* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
     *3.* *Owens* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
   *E.* *Wells Fargo Account* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
*F.* *IME Investigates Defendant* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
   *G.* *HHS/OIG Investigates Defendant* . . . . . . . . . . . . . . . . . . . . . . *7*
   *H.* *Veronica Johnson* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*

*IV.* *MOTION FOR JUDGMENT OF ACQUITTAL* . . . . . . . . . . . . . . . . . . . . *7*
   *A.* *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
   *B.* *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
     *1.* *Mail Fraud Counts* . . . . . . . . . . . . . . . . . . . . . . . . *8*
     *2.* *Identity Theft Counts* . . . . . . . . . . . . . . . . . . . . . . *9*
     *3.* *Money Laundering Counts* . . . . . . . . . . . . . . . . . . *11*
   *C.* *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

*V.* *MOTION FOR NEW TRIAL* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

|  | A. | Legal Standard | 13 |
|  | B. | Analysis | 14 |
|  |  | 1. Whether verdicts are against the weight of the evidence | 14 |
|  |  | 2. Whether instruction on Aggravated Identity Theft was proper | 15 |
|  |  | 3. Whether Defendant was denied his right to testify | 17 |
|  |  | 4. Whether Defendant's trial counsel was ineffective | 18 |
|  | C. | Summary | 19 |
| VI. | MOTION FOR ARREST OF JUDGMENT | | 19 |
| VII. | CONCLUSION | | 20 |

## I. INTRODUCTION

The matter before the court is Defendant Douglas P. Dvorak's "Post Trial Motions for Judgment of Acquittal, New Trial[] and Arrest of Judgment" ("Motion") (docket no. 76).

## II. RELEVANT PROCEDURAL HISTORY

On September 24, 2008, a grand jury returned a thirty-nine count Indictment (docket no. 1) against Defendant. Counts 1 through 22 charged Defendant with Mail Fraud, in violation of 18 U.S.C. § 1341 ("Mail Fraud Counts"). Counts 23 through 33 charged Defendant with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1) ("Identity Theft Counts"). Counts 34 through 39 charged Defendant with Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) ("Money Laundering Counts").

From April 6, 2009 through April 9, 2009, the court held a jury trial. At the close of the government's case and the close of all evidence, Defendant made an oral motion for Judgment of Acquittal. The court denied the oral motion.

On April 9, 2009, the jury returned verdicts that found Defendant guilty on all of the counts. With respect to the Identity Theft Counts, the jury answered Interrogatories (docket no. 60 at pp. 24-42) finding unanimously and beyond a reasonable doubt that

Defendant knew the personal information he used to commit the crime of Aggravated Identity Theft as charged in the Identity Theft Counts was assigned to another person.

On June 29, 2009, Defendant filed the Motion. On July 10, 2009, the government filed a Resistance (docket no. 79). The court finds the Motion fully submitted and ready for decision.

### III. TRIAL EVIDENCE

At trial, the parties presented the following evidence:

#### A. *Medicaid*

Medicaid is a government-funded health care program. Medicaid is designed to provide health care to the needy. Medicaid assigns each of its beneficiaries a Medicaid identification number ("MIN"). Each MIN is unique to the beneficiary to whom it is assigned. A Medicaid provider can call to obtain a MIN for any Medicaid beneficiary if the caller can provide the beneficiary's name and date of birth or name and social security number. Licensed health care providers treat Medicaid beneficiaries and submit claims to Medicaid with a MIN to obtain reimbursement for their services. A Medicaid processor reviews the claim and remits payment to the health care provider. Iowa Medicaid Enterprise ("IME") processes Medicaid claims and payments for Iowa's Medicaid health care providers. Medicaid health care providers are given guidance on how many billable visits are allowed each year for each diagnosis code.

#### B. *Defendant*

Defendant is a chiropractor. Defendant is a licensed Medicaid health care provider with IME. When Defendant sought reimbursement for chiropractic services he provided to Medicaid beneficiaries, he mailed his Medicaid claims to IME. IME processed these claims and mailed Defendant his Medicaid reimbursement checks.

#### C. *Ashley Owens*

Ashley Owens was one of Defendant's patients. Owens is a Medicaid beneficiary.

Owens testified that, after they had developed a patient/provider relationship, Defendant asked her whether she knew anyone else who was eligible for Medicaid. Owens indicated that she did. Owens then obtained the names and birth dates of Medicaid-eligible children from Hawthorne Hills, a low-income apartment complex located in Cedar Rapids, Iowa, by asking various children for their names and birth dates as well as the names and birth dates of their family members. In return for this information, Owens paid the children $5. Defendant supplied the money Owens paid to the children for these "referrals." Owens's mother, niece and her niece's girlfriends also participated in the "referral" service.

Owens testified that, although she did not necessarily receive a "referral fee" in return for the information she provided to Defendant, she knew that, "if [she] needed something, [she] could call [Defendant]." Trial Transcript ("Tr. Trans.") Vol. II (docket no. 70), at 19. Owens believed that Defendant was using these referrals to build a client base.

### D. Defendant's Medicaid Billing

#### 1. Generally

At trial, numerous witnesses testified on behalf of the government with respect to certain Medicaid claims Defendant submitted to IME. These witnesses included Lanaysha Sallis, Lesa Paul, Lynette Batey, Sarah Celichowski, Bonnie Sorenson, Jurisha Barnes, Sheila Robertson, Amber Robinson, Kim Sykora, Lucille Jones, Sheryl Doss, Louise Stinson, Deniece Smith and Amber McKinney. Most of these witnesses either lived at Hawthorne Hills or knew someone who had lived at Hawthorne Hills.[1] All of these witnesses had children who were eligible for Medicaid during the time period at issue.

The government introduced Medicaid claim forms Defendant had filed with IME to obtain reimbursement for chiropractic services he purportedly provided to the children

---

[1] Stinson and McKinney testified that they neither lived at Hawthorne Hills nor knew anyone who lived at Hawthorne Hills.

of the witnesses identified above. However, each witness testified that their children had never been treated by Defendant. These witnesses also testified that they had never given Defendant permission to use their children's MINs or other personal information to file a claim with IME for Medicaid reimbursement.

### 2. *Vania Minor*

Vania Minor resides in North Liberty and has a minor daughter who is eligible for Medicaid. In June of 2007, one of Minor's friends introduced her to Defendant. Minor's daughter was present at this meeting. The day after they met, Defendant contacted Minor by telephone and asked to meet with her personally. Defendant and Minor met in North Liberty, Iowa. At that time, Defendant informed Minor that he had billed IME for Medicaid reimbursement for approximately twenty chiropractic services in her daughter's name by using her daughter's MIN. Minor testified that this was impossible because she had only met Defendant the previous day and because Minor's daughter had never been treated by Defendant. Defendant told Minor that, if investigators asked her about him, he would provide her daughter with chiropractic care commensurate with the services for which he had billed Medicaid in her daughter's name. IME's billing records reflect that Defendant sought Medicaid reimbursement for twenty-four billable visits with Minor's daughter.

### 3. *Owens*

Owens has a minor daughter who is eligible for Medicaid. At trial, Owens testified that Defendant had treated her daughter approximately ten times. However, Defendant filed approximately 24 claims for reimbursement with IME by using the name, date of birth and MIN of Owens's daughter. Owens also testified that Defendant did not provide chiropractic services to her daughter in June of 2006. However, Defendant submitted Medicaid claims to IME in the name of Owens's daughter for approximately 16 billable visits in June of 2006.

### E. Wells Fargo Account

Benita Messer is employed by Wells Fargo Bank ("Wells Fargo") and works in the Wells Fargo branch office located on First Avenue in Cedar Rapids, Iowa. Messer manages the teller staff at that branch.

Prior to November of 2006, Defendant frequently cashed Medicaid checks at Messer's branch office, but did not have a Wells Fargo account. After Messer advised Defendant that his Medicaid check processing would be better facilitated if he opened a Wells Fargo account, Defendant opened a Wells Fargo account.

Messer testified that Defendant deposited large Medicaid checks into his Wells Fargo account. Later, Defendant withdrew cash from his Wells Fargo account for the precise amount he had deposited via checks from IME. For example, on one occasion, Defendant deposited a Medicaid check in the amount of $13,600.09. Later, after this check had cleared, Defendant withdrew $13,600.09 in cash from his Wells Fargo account—precisely the same amount that he had deposited in the form of a check from IME. Messer testified that, after a customer withdraws cash from an account, Wells Fargo is unable to track the location of that cash.

### F. IME Investigates Defendant

From 2006 through 2007, Kelly Vinzant worked for IME as a surveillance and utilization reviewer. Vinzant reviewed IME provider claims to determine whether a specific provider was utilizing Medicaid services properly and submitting appropriate claims.

Vinzant noted that Defendant had initially submitted IME claims that sought reimbursement for one to six patients in a day. According to the records, the number of patients Defendant treated increased dramatically. For instance, Defendant claimed he treated forty-one patients on Sunday, November 20, 2005, and sixty-five patients on Thanksgiving day. Vinzant testified that, in her experience, most chiropractors did not

6

treat sixty-five patients in one day or treat on Sundays or holidays.

## G. HHS/OIG Investigates Defendant

Pursuant to information provided by Vinzant, Special Agent Blair Johnson from the United States Department of Health and Human Services, Officer of the Inspector General ("HHS/OIG"), investigated Defendant. S/A Johnson searched Defendant's residence pursuant to a search warrant. During the search, S/A Johnson obtained medical records, Medicaid records Wells Fargo records. The records pertain to the children referenced in section III.D above. The government introduced these documents into evidence at trial.

## H. Veronica Johnson

Veronica Johnson was one of Defendant's clients. Johnson testified that Defendant treated her several times a week for several years. Johnson testified that, each time Defendant adjusted her, he did so on a chiropractor's table he brought to her home. Johnson testified that she would often have holiday gatherings at her home, which approximately one hundred people would attend. Johnson testified that Defendant provided adjustments to her and her guests free of charge. Defendant paid Johnson a $20 referral fee for each new patient she referred to him. Johnson referred her adult acquaintances and their children to Defendant.

Johnson's referrals to Defendant included Jennifer Vestal and Brandi Tritle. Vestal and Tritle testified that Defendant often adjusted them and their children at Johnson's home on holidays without pay. Destiny Thurmon provided similar testimony.

## IV. MOTION FOR JUDGMENT OF ACQUITTAL

### A. Legal Standard

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. Fed. R. Crim. P. 29(c). It is well-settled, however, that jury verdicts are not

lightly overturned. *See, e.g., United States v. Peneaux*, 432 F.3d 882, 889 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The court must view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences. *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). The court must uphold the jury's verdict so long as a reasonable-minded jury could have found Defendant guilty beyond a reasonable doubt. *Id.* Moreover, the court "must uphold the jury's verdict even where evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Id.* (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). It is not the province of the court to weigh the evidence or evaluate the credibility of witnesses. *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004). That task is for the jury. *Id.*

### *B. Analysis*

Defendant moves for a judgment of acquittal on all counts of conviction. *See* Motion at 1 (stating Defendant "realleges and incorporates by reference as if fully set forth herein his Motions for Judgment of Acquittal at the close of the government's case and the close of all evidence."). Accordingly, the court shall evaluate the sufficiency of the evidence for each count of conviction.

### *1. Mail Fraud Counts*

The crime of mail fraud, as charged in the Mail Fraud Counts, has three essential elements, which are:

> *One*, the defendant voluntarily and intentionally devised a scheme to defraud Medicaid out of money by means of material false representations regarding claims for chiropractic services that were never performed;
>
> *Two*, the defendant did so with intent to defraud; and
>
> *Three*, the defendant used, or caused to be used, the mail in furtherance of, or in attempt to carry out, some essential step

8

in the scheme[.]

Final Jury Instruction No. 12 (docket no. 57), at 13; *see also* 8th Cir. Model Criminal Jury Instr. 6.18.1341 (2007) (same); *United States v. French*, 88 F.3d 686, 688 (8th Cir. 1996) (setting forth elements of mail fraud).

At trial, the government introduced sufficient evidence to show that Defendant mailed claims to IME seeking reimbursement for chiropractic services. The claim forms Defendant mailed to IME matched the MINs that the Indictment identified. Testimonial evidence at trial shows that none of the Medicaid beneficiaries to whom these MINs were assigned received the chiropractic services for which Defendant sought and received payment. This evidence shows Defendant intended to defraud Medicaid of funds. The court finds that this evidence is sufficient to sustain the convictions on the Mail Fraud Counts.

Accordingly, the court shall deny the Motion to the extent it seeks a Judgment of Acquittal on the Mail Fraud Counts.

### 2. *Identity Theft Counts*

The crime of Aggravated Identity Theft, as charged in the Identity Theft Counts, requires the government to show that the defendant, while engaged in fraud, "knowingly transfer[red], possess[ed], or use[d], without lawful authority, a means of identification of another person." *Flores-Figueroa v. United States*, 129 S. Ct. 1886, 1894 (2009) (quoting 18 U.S.C. § 1028A(a)(1)). This requires the government "to show that [the defendant] knew that the means of identification belonged to another person." *Id.* at 1894.

At the time of trial, however, the court followed the Eighth Circuit Court of Appeals's holding that the word "knowingly" in 18 U.S.C. § 1028A only modified the verbs "transfers, possessed, or uses,"and not the phrase "of another person." *United States v. Flores-Figueroa*, 274 F. App'x 501, 502 (8th Cir. 2008). In other words, under Eighth Circuit law at the time of trial, the government did not need to prove that the

defendant knew the means of identification at issue belonged to another person. *Id.*

As a precautionary measure, however, the court required the jury to answer the Interrogatories. Specifically, the court required the jury to answer whether Defendant knew that "the personal information he used to commit the crime of aggravated identity theft as charged in [Counts 23-33] was assigned to another person[.]" Interrogatories at 24, 26, 28, 30, 32, 34, 36, 38, 40, 42 & 44. The jury answered the Special Interrogatories affirmatively, finding "beyond a reasonable doubt" that Defendant "<u>did know</u> the personal information he used to commit the crime of aggravated identity theft [. . .] was assigned to another person[.]" *Id.* (emphasis in original). After trial, the United States Supreme Court reversed *Flores-Figueroa* and held that the government was required to prove that "the defendant knew that the means of identification at issue belonged to another person." *Flores-Figueroa v. United States*, 129 S. Ct. 1886, 1894 (2009).

At trial, the government introduced sufficient evidence to show that Defendant devised a fraudulent scheme to defraud Medicaid by submitting false claims for chiropractic services he had not rendered. The evidence at trial shows that, in carrying out his fraud, Defendant sought and obtained the names and birth dates of minor Medicaid beneficiaries with the assistance of Owens and Owens's acquaintances. The evidence at trial shows that Defendant used this personal information to obtain the MINs of the minor Medicaid beneficiaries set forth in the Indictment. This evidence demonstrates that Defendant knew these MINs belonged to another person, namely, to the Medicaid beneficiaries to whom these MINs were assigned. Owens testified that Defendant asked her to obtain the names and birth dates of Medicaid beneficiaries, which demonstrates that Defendant knew the names, birth dates and MINs belonged to specific Medicaid beneficiaries. The statements Defendant made to Minor also demonstrate that Defendant knew that the MINs belonged to another person. The evidence also shows that he used

these MINS without authority when he filed false claims with IME. The court finds this evidence is sufficient to sustain the convictions on the Identity Theft Counts.

Accordingly, the court shall deny the Motion to the extent it seeks a Judgment of Acquittal on the Identity Theft Counts.

### 3. *Money Laundering Counts*

The crime of Money Laundering requires the government to prove:

> (1) that the defendant attempted to conduct a financial transaction;
>
> (2) with money that involved the proceeds of mail fraud;
>
> (3) that, at the time the defendant conducted the financial transaction, he knew the money represented the proceeds of some form of unlawful activity; and
>
> (4) that the defendant conducted the financial transaction knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds.

Final Jury Instruction No. 17 (docket no. 57), at 24; 8th Cir. Model Criminal Jury Instr. 6.18.1956B (2007) (same); *United States v. Awada*, 425 F.3d 552, 524 (8th Cir. 2005) (setting forth elements of money laundering under 18 U.S.C. § 1956).

For purposes of the Motion, Defendant concedes there is sufficient evidence on the first three elements and asks for a Judgment of Acquittal on the fourth element. Defendant argues that "the evidence was simply that the cash was withdrawn from the bank." Brief in Support of Motion (docket no. 76-2), at 3. Defendant argues that his practice of depositing Medicaid checks and withdrawing the proceeds of these checks does not show that Defendant conducted financial transactions to conceal or disguise the proceeds from his fraudulent Medicaid scheme.

In support of his argument, Defendant cites *United States v. Sanders*, 929 F.2d 1466, 1472 (10th Cir. 1991). In *Sanders*, the Tenth Circuit Court of Appeals held that,

11

to prove money laundering, the government must show more than a defendant's participation in a financial transaction that involved the proceeds of unlawful activity. *Id*. *Sanders* held that, otherwise, it would "turn the money laundering statute into a 'money spending statute.'" *Id*. The evidence presented in the instant action shows that Defendant did more than simply spend or use the proceeds he obtained in the fraudulent Medicaid scheme. Indeed, the evidence shows that Defendant opened a Wells Fargo checking account specifically to cash checks he received from his Medicaid fraud scheme. Defendant waited until these checks had cleared, then, withdrew cash from the account that matched the precise amount of the deposits of his fraudulently-obtained Medicaid reimbursement checks. Messer testified that Wells Fargo is unable to track the location of cash withdrawals. Therefore, by converting the proceeds of his Medicaid fraud into cash, Defendant was better able to conceal the location of his illegal proceeds. In light of the foregoing, the court finds that the government introduced sufficient evidence to sustain the convictions on the Money Laundering Counts.

Defendant also argues that he had ineffective assistance of counsel in defending himself against the Money Laundering Claims. Specifically, Defendant argues that he had evidence that showed he had never concealed or disguised the proceeds of his Medicaid fraud scheme that his attorney failed to introduce at trial. "Generally, ineffective assistance of counsel claims are better left for post-conviction proceedings." *United States v. Cook*, 356 F.3d 913, 919 (8th Cir. 2006) (citing *United States v. Soriano-Hernandez*, 310 F.3d 1099, 1105 n.9 (8th Cir. 2002)). Exceptions to this rule exist "where the record has been fully developed or to avoid a plain miscarriage of justice" or "when trial counsel's ineffectiveness is readily apparent or obviously deficient." *Id*. None of these exceptions are present in the instant action. That is, there is no record evidence showing trial counsel provided ineffective assistance of counsel, Defendant has not requested an evidentiary hearing on ineffective assistance of counsel, Defendant does not argue that a miscarriage of justice occurred and there is no readily apparent indication of any

deficiency. For these reasons, the court need not consider Defendant's ineffective assistance of counsel claim at this juncture.

Even if one or more of the *Cook* exceptions were present in the instant action, Defendant's remedy would not be a judgment of acquittal but a new trial. *United States v. Samuels*, No. 06-CR-1020-LRR, 2007 WL 2499458, *8 (N.D. Iowa Aug. 30, 2007) (citing *United States v. Durant*, 545 F.2d 823, 829 (8th Cir. 1976)).

Accordingly, the court shall deny the Motion to the extent it seeks a Judgment of Acquittal on the Money Laundering Counts.

### *C. Summary*

In light of the foregoing, the court finds that a reasonable-minded jury could have found Defendant guilty on all counts of conviction. Accordingly, the court shall deny the Motion to the extent it seeks a Judgment of Acquittal on any count of conviction.

### V. MOTION FOR NEW TRIAL

### *A. Legal Standard*

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if justice so requires." Fed. R. Crim. P. 33(a). A district court is granted broad discretion in considering a motion for a new trial. *Peters*, 462 F.3d at 957. A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (citation omitted). However, the court "should grant a new trial only if 'the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'" *See Peters,* 462 F.3d at 957 (quoting *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987)).

A district court enjoys more latitude in granting new trials under Rule 33 than in granting motions for judgment of acquittal under Rule 29; however, "[m]otions for new trials based on the weight of the evidence are generally disfavored." *Campos*, 306 F.3d

at 579. District courts "must exercise the Rule 33 authority 'sparingly and with caution.'" *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)); *see also* Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 553 (3d ed. 2004) (stating that granting a new trial under Rule 33 is an unusual remedy reserved for "exceptional cases in which the evidence preponderates heavily against the verdict").

The court's standard of review differs from the standard that is applied in the motion for judgment of acquittal.

> When a motion for new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is not whether the defendant should be acquitted outright, but only whether he should have a new trial. The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses. If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*Lincoln*, 630 F.2d at 1319; *see also United States v. Johnson*, 474 F.3d 1044, 1051 (8th Cir. 2007).

### B. Analysis

Defendant moves for a new trial on four grounds. The court considers each of these grounds, in turn.

#### 1. *Whether verdicts are against the weight of the evidence*

First, Defendant moves for a new trial on the grounds the verdicts are against the weight of the evidence. After independently weighing the evidence introduced at trial and summarized above, the court finds that the verdicts comport with the weight of the evidence. Accordingly, the court shall deny the Motion to the extent it seeks a new trial

based on the weight of the evidence.

### 2. *Whether instruction on Aggravated Identity Theft was proper*

Second, Defendant argues that the court erroneously instructed the jury on the elements of Aggravated Identity Theft. More specifically, Defendant argues that the court erred when it failed to instruct the jury that the government needed to prove Defendant knew the means of identification at issue, that is, the Medicaid beneficiary names, birth dates and MINs used in Defendant's Medicaid claims, belonged to another person.

As stated earlier, at the time of trial, the court instructed the jury in accordance with the Eighth Circuit Court of Appeals's holding that, under the plain language of 18 U.S.C. § 1028A, "knowingly" only modified the verbs "transfers, possessed, or uses," and not the phrase "of another person." *Flores-Figueroa*, 274 F. App'x at 502. After the trial, the United States Supreme Court held that 18 U.S.C. § 1028A(a)(2) requires the government to show that the defendant knew the means of identification he or she unlawfully possessed or used belonged to another person. *Flores-Figueroa*, 129 S. Ct. at 1888. As a precautionary measure at trial, the court required the jury to answer Interrogatories on the Aggravated Identity Theft charges. The jury answered the Interrogatories affirmatively, finding "beyond a reasonable doubt" that Defendant "<u>did know</u> the personal information he used to commit the crime of aggravated identity theft [. . .] was assigned to another person[.]" Interrogatories at 24, 26, 28, 30, 32, 34, 36, 38, 40, 42 & 44. (emphasis in original).

In *United States v. Tureseo*, 566 F.3d 77 (2d Cir. 2009), the Second Circuit Court of Appeals addressed a similar issue. In that case, the district court had instructed the jury in keeping with the Second Circuit Court of Appeals's holding that, in aggravated identity theft cases, the government was not required to prove that the defendant knew that the means of identification at issue belonged to another person. *Tureseo*, 566 F.3d at 86. Subsequently, the Supreme Court decided *Flores-Figueroa*. The Second Circuit Court of Appeals held that, as a result, it was "constrained to identify error in the District Court's

refusal to instruct the jury that an aggravated identity theft conviction requires a finding that [the defendant] knew that the means of identity he used [. . .] belonged to another person[.]" *Id*. The Second Circuit Court of Appeals noted that "a jury instruction that omits an essential element of the offense is constitutional error" and that "a conviction can only stand if such error was harmless beyond a reasonable doubt." *Id*. The Second Circuit Court of Appeals found that the error was not harmless because the evidence surrounding the count of conviction did not "flow all in one direction" in the government's favor. *Id*. That is, there was evidence presented at trial that suggested the defendant did not know that the means of identification he used belonged to another person. *Id*.

For purposes of the Motion, the court assumes that it committed error when it failed to instruct the jury that the government needed to prove, beyond a reasonable doubt, that Defendant knew that the means of identification at issue belonged to another person. *Id*. However, this error was harmless. The evidence clearly establishes that Defendant knew that the means of identification at issue, that is, the MINs and birth dates of certain minor children, belonged to other Medicaid beneficiaries. Defendant specifically requested that Owens find the names and birth dates of actual people, that is, Medicaid beneficiaries. Defendant's admission to Minor that he had used her daughter's identity to apply for Medicaid reimbursement also supports this conclusion. Defendant did not present evidence suggesting otherwise. Additionally, the jury's responses to the Interrogatories show that it believed, "beyond a reasonable doubt," that Defendant knew that the means of identification at issue belonged to another person. Under the circumstances of this case, the court finds beyond a reasonable doubt that its error in omitting an element of the offense in the jury instructions was harmless. *Id*. Further, the court finds that the jury's answers to the Special Interrogatories comport with the evidence.

Accordingly, the court shall deny the Motion to the extent it seeks a new trial based on the weight of the evidence with respect to the knowledge element the Supreme Court considered in *Flores-Figueroa*.

### *3. Whether Defendant was denied his right to testify*

Third, Defendant moves for a new trial on the grounds that he was denied his constitutional right to testify. Defendant argues that he wanted to testify to develop a certain defense with respect to the Money Laundering Counts, but his trial counsel, David Nadler, was unwilling to prepare his trial testimony and determined his trial testimony was "weak." Def. Br. (docket no. 76-2), at 5. Defendant also argues that, when coupled with the "[c]ourt's mention of contempt and prison[,]" the court "must conclude that [Defendant] did not knowingly and intelligently waive his constitutional right to testify in his own defense." Brief in Support of Motion (docket no. 76-2) at 6.

"A criminal defendant has a constitutional right to testify on [his own] behalf." *Berkovitz v. Minnesota*, 505 F.3d 827, 828 (8th Cir. 2007) (per curiam) (citing *Rock v. Arkansas*, 483 U.S. 44, 49-53 (1987)). "Only the defendant may waive [his] right to testify, and the waiver must be made voluntarily and knowingly." *Id.* However, a trial court is not required to procure on the record a defendant's express waiver of his right to testify. *Id.* "A defendant who does not alert the trial court that he wishes to testify when his attorney rests without calling him to the stand has waived his right to testify." *United States v. Hayes*, 56 F. App'x 294, 295 (8th Cir. 2003) (citing *United States v. Bernloehr*, 833 F.2d 749, 751-52 (8th Cir. 1987)). A defendant may not "indicate at trial his apparent acquiescence in his counsel's advice that he not testify, and then later claim that his will to testify was 'overcome.'" *Bernloehr*, 833 F.2d at 752.

On the third day of trial, the court reminded Defendant about the inadmissibility of certain types of evidence at trial. The inadmissibility of the evidence at issue had been discussed on the second day of trial in some detail. *See* Tr. Trans Vol. II (docket no. 70), at 5, pp. 266-69 & 23-24, pp. 339-344. Despite the court's admonition concerning the admissibility of this evidence, the court believed Defendant's counsel had violated the spirit of the court's orders. *Id.* at 29-30, pp. 463-66. The court felt that a reminder about the admissibility of this evidence was necessary because it did not want that evidence "slipped

17

into testimony by [Defendant] if he takes the stand." Tr. Trans. Vol. III (docket no. 71), at 3. The court warned Defendant that, if he testified about this inadmissible evidence, he would "be facing contempt, and that does have a prison term and a fine." *Id*. Then, the court stated: "And I will have a hearing on that, and it will be a separate proceeding. So don't make the mistake of indirectly going where the [c]ourt told you not to go." *Id*.

Later that day, the court made a record on Defendant's right to testify. The court informed Defendant that he had a right to testify. The court advised Defendant to speak to his attorney about his right to testify and reflect on his decision. After a brief recess, Defendant presented additional evidence, but he did not exercise his right to testify.

Defendant had ample opportunity to inform the court of his desire to testify. Defendant has presented no evidence showing that he alerted or tried to alert the court that he wanted to testify. The court's admonition to abide by its rulings concerning the inadmissibility of certain evidence did not impact Defendant's right to testify—it merely warned him to stay within the confines of the court's direction concerning inadmissible evidence. Therefore, the court concludes that Defendant was not deprived his constitutional right to testify. Rather, he waived his right to testify. *See Hayes*, 56 F. App'x at 295 (affirming district court's denial of motion for new trial due to defendant's alleged denial of right to testify because record was "replete with evidence to support a finding that [the defendant] was aware of, and knowingly and voluntarily waived, his right to testify").

Accordingly, the court shall deny the Motion to the extent it seeks a new trial based on Defendant's failure to exercise his constitutional right to testify.

### 4. *Whether Defendant's trial counsel was ineffective*

Fourth, Defendant argues that a new trial is warranted because his trial counsel was ineffective. Specifically, Defendant argues that his trial counsel failed to develop a theory of defense that showed he submitted the Medicaid claims at issue in good faith. Defendant argues that his trial counsel should have questioned certain witnesses more thoroughly to develop this theory. As stated earlier, "[g]enerally, ineffective assistance of counsel claims

are better left for post-conviction proceedings." *Cook*, 356 F.3d 913, 919 (8th Cir. 2006). None of the exceptions to *Cook* enumerated above are present in the instant action.

Even if the court had a record on the ineffective assistance claim, the court would find that trial counsel was not ineffective. "To establish ineffective assistance of counsel, [Defendant] must show that [his attorney]'s performance fell below an objective standard of reasonable competence and that this performance prejudiced him." *United States v. Williams*, 562 F.3d 938, 941 (8th Cir. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Even if the court assumes that Defendant's unsupported allegations related to an undeveloped theory of defense are true and that trial counsel's performance fell below an objective standard of reasonable competence, Defendant's ineffective assistance claim fails as a matter of law. The development of the theory of defense Defendant outlined would not diminish the overwhelming evidence that supports Defendant's guilt. In other words, even if attorney Nadler's performance was deficient, Defendant cannot show that he was prejudiced.

In light of the forgoing, the court shall deny the Motion to the extent it seeks a new trial on the theory that trial counsel provided ineffective assistance at trial.

### C. Summary

In conclusion, the court finds that none of the grounds discussed above warrant a new trial. Accordingly, the court shall deny the Motion to the extent it requests a new trial.

## VI. *MOTION FOR ARREST OF JUDGMENT*

Federal Rule of Criminal Procedure 34 governs a motion for arrest of judgment. Rule 34 states:

> **(a) In General.** Upon the defendant's motion or on its own, the court must arrest judgment if
>
> **(1)** the indictment or information does not charge an offense; or
>
> **(2)** the court does not have jurisdiction of the charged offense.

Fed. R. Crim. P. 34 (emphasis in original). The Eighth Circuit Court of Appeals has explained that, under Rule 34, a motion for arrest of judgment "must be based upon failure of the indictment to charge an offense or upon a finding that the court was without jurisdiction of the offense." *United States v. Whitted*, 454 F.2d 642, 646 (8th Cir. 1972). Rule 34, and its attendant relief, do not apply when "[n]either of those circumstances is present[ .]" *Id.* Defendant fails to argue whether either of these circumstances are present in the instant action. Accordingly, the court shall deny the Motion to the extent it requests an arrest of judgment.

### *VII. CONCLUSION*

In light of the foregoing, the Motion (docket no. 76) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 2nd day of September, 2009

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA